**SO ORDERED.**

**SIGNED this 13 day of May, 2009.**

_____

**J. Rich Leonard
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILSON DIVISION

IN RE:

VILLAGE LANDING, LLC                     Case No: 09-00855-8-JRL
                                         Chapter 7
    Debtor.

_____

ORDER

This matter came before the court on the involuntary petition filed by creditor, Harold K. Jordan & Company, Inc. ("Jordan"), against Village Landing, LLC, the respondent. The court conducted a trial in this matter on April 16, 2009, in Raleigh, North Carolina.

BACKGROUND

The respondent, Village Landing, LLC ("Village Landing"), is a North Carolina limited liability company owned by Brannon and Julie Lancaster ("the Lancasters"). In 2006, the Lancasters became interested in developing a condominium project in Leland, North Carolina. The project was to be built on land owned by the respondent. Jordan was hired as the general contractor. In a joint effort, the Lancasters and Jordan formed the entity Shady Grove Development, Inc. ("Shady Grove") through which they planned to develop the respondent's property. Shady Grove and Jordan executed a written construction contract on the standard

Owner-Contractor form approved by the American Institute of Architects that included an arbitration clause. However, difficulty arose in Shady Grove's ability to obtain financing, allegedly as a result of Jordan's unwillingness to provide personal financial information and execute a personal guaranty. It is the contention of the respondent that, after Shady Grove was unable to move forward, it stepped in as the entity through which development would occur. No written contract expressly identifying the respondent as a party was executed between the respondent and Jordan, but the respondent did execute a series of "change orders" that clearly reference the original contract with Shady Grove. The respondent contends that when it became a party to the development project, the intention was always to build townhouses instead of condominiums. The respondent operated under the impression that Jordan was aware of this change, making payments to Jordan after payment applications were received. In reality, 12 condominium units were constructed.

On July 3, 2007, after the respondent fell behind in payments, Jordan filed an action in the Superior Court of Wake County seeking a judgment against the respondent and Shady Grove for breach of a construction contract and enforcement of a lien on real property. On September 10, 2007, Shady Grove filed an Answer and Counterclaim stating that pursuant to the terms of the executed contract, Jordan was required to arbitrate its claims against Shady Grove. Village Landing filed a separate counterclaim alleging, among other issues, unfair and deceptive trade practices. On September 27, 2007, Jordan filed a Motion to Compel Arbitration between itself and the respondent, asserting that the Shady Grove contract was assigned to the respondent. On November 19, 2007, Superior Court Judge Stephens entered an Order in favor of Jordan compelling arbitration. Arbitration commenced on March 17, 2008. On April 3, 2008, the

arbitrator rendered his award in favor of Jordan against both Shady Grove and Village Landing. On April 4, 2008, Jordan moved to confirm the award, while the respondent moved to vacate the award. The motion to vacate was denied and the arbitration award was confirmed on June 6, 2008.

On July 3, 2008, the respondent filed its Notice of Appeal. On November 21, 2008, Jordan moved to dismiss the respondent's appeal alleging various appellate procedural rule violations. The respondent filed its response. On December 9, 2008, the Court of Appeals allowed the motion to dismiss. On January 5, 2009, the respondent filed a motion for reconsideration. The Court of Appeals denied reconsideration on January 22, 2009.

On February 4, 2009, Jordan filed an involuntary petition with this court. The respondent moved for a time extension to respond to the petition on February 25, 2009. Then, on March 9, 2009, the respondent filed a Petition for a Writ of Certiorari with the North Carolina Supreme Court, along with a petition for a Writ of Supersedeas and Motion for a Temporary Stay. This court granted the respondent's motion for extension on March 10, 2009. On that same date, the North Carolina Supreme Court allowed the stay.

## DISCUSSION

Pursuant to 11 U.S.C. § 303(b)(2), a single creditor may initiate an involuntary petition against a debtor when the debtor has fewer than twelve creditors, and the claim held by the single creditor, totaling more than $13,475.00, is not the subject of a bona fide dispute. The sole issue before this court is whether the claim asserted by Jordan is subject to a bona fide dispute. No issue is raised as to the number of creditors or whether the respondent is paying its debts as they come due.

No bona fide dispute exists when the matter has been resolved by an unappealable state court judgment.  In re Byrd, 357 F.3d 433, 438, Footnote 1 (4th Cir. 2004).  Jordan filed the involuntary petition on February 4, 2009.  Upon filing, the automatic stay came into effect. Applicable to all entities, the stay halts the "commencement or continuation. . .of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title. . . ." 11 U.S.C. § 362(a)(1). The Fourth Circuit has held that the language of § 362 extends to stay "all appellate proceedings in actions originally brought against the debtor, even when it is the debtor who files the appeal." Id. at 339 (4th Cir. 2004).   Therefore, the respondent's Writ of Certiorari and Writ of Supersedeas and Motion for a Temporary Stay were barred by the automatic stay.

Flowing from this finding is the inescapable conclusion that the order of the North Carolina Supreme Court  allowing a temporary stay of the order of the Court of Appeals is annulled by the automatic stay. *See*, Mar. Elec. Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1207 (3rd Cir. 1991)("Holding that judicial acts and proceedings in violation of the automatic stay are void *ab initio* is consistent with the stay's function. . . .").  When Jordan initiated the involuntary petition here, the respondent had no appeal pending that might have created an issue as to whether a bona fide dispute exists.  Instead, having exhausted its right of direct appeal, the respondent was subject to a  final and  unappealable state court judgment.  As this case presently stands, the automatic stay keeps the respondent from attempting any further state judicial action. Based on the foregoing, the court concludes that the procedural posture of this case brings it squarely within the holding of Byrd, *supra,* that a bona fide dispute no longer exists as to an issue that has been resolved adversely by final judgment and as to which a right to a direct

appeal no longer exists.

Although confident this procedural resolution is determinative, the court has also reviewed the record in this case to meet the mandate of <u>Byrd</u> to determine if this is the extraordinary case where the state court judgement should not be given preclusive effect because of a defect in the proceedings or obvious error. This case does not fit that description. In fact, the more the court has delved into the record, the more persuasive the evidence has become that Judge Stephens was right in holding the respondent to the terms of the Shady Grove contract as an assignee. No commercial lender would have approved a project of this magnitude without a construction contract in place. Julie Lancaster, herself a sophisticated banker who would have understood this requirement, testified in her deposition that she supplied the Shady Grove contract to the lender to meet this requirement, and it was part of the closing package making the loan to the respondent. (Lancaster deposition, pp. 95-96). The change orders that she executed in the name of the respondent clearly reference the original contract with Shady Grove; in fact, they are nonsensical unless understood in this context. The original demand for arbitration in this case came not from Jordan, but from counsel for Shady Grove and the respondent, fairly read as requesting it for both parties. (Shipman letter of August 1, 2007; Adams letter of August 6, 2007). Further, counsel for respondent called on the architect for the project to mediate a dispute under the construction contract to determine whether a "credit is due to Shady Grove Development and/or Village Landing LLC for these change orders." (Adams letter of August 14, 2007). Although there may have been a legitimate dispute between the parties as to whether townhomes or condominiums were to be constructed, this issue is separate and apart from whether the respondent inserted itself as an assignee of the Shady Grove contract. Despite the

formal position taken later in litigation, the record is replete with evidence of a contemporaneous understanding that Village Landing was a party to the contract and thus subject to the arbitration provision.

Based on the foregoing, an order for relief will be entered forthwith adjudicating the respondent as a debtor under Chapter 7 of the Bankruptcy Code.

"END OF DOCUMENT"